IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANITA LOYA,

        Plaintiff,

vs.                              No. CIV 08-0278 RB/CEG

WAL-MART STORES EAST, L.P.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's (Wal-Mart's) Motion for Summary Judgment (Doc. 48), filed on April 13, 2009. Jurisdiction arises under 28 U.S.C. §§ 1331 and 1343(a)(4). Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, Defendants' Motion for Summary Judgment is denied as to the hostile work environment claim and granted as to the retaliation claim.

I.      **Background.**

Plaintiff ("Ms. Loya") has worked for Wal-Mart since 1993. From November 2004 until May 2006, Ms. Loya was an Assistant Manager at the Wal-Mart in Deming, New Mexico. On January 26, 2006, Ms. Loya filed an administrative Charge of Discrimination alleging disparate treatment based on sex and age, as well as sexual harassment by the Deming Store Manager, Les Williams ("2006 Charge"). On May 6, 2006, Ms. Loya voluntarily transferred to the Wal-Mart store in Silver City, New Mexico. The United States Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter with respect to the 2006 Charge on September 15, 2006.

In June 2007, Wal-Mart terminated Les Williams' employment for unauthorized surveillance

of Wal-Mart employees.  On August 18, 2007, Wal-Mart rehired Les Williams and placed him in the Silver City store as an Assistant Manager.  On August 30, 2007, Wal-Mart granted Ms. Loya a paid leave of absence due to stress and situational anxiety.  On September 11, 2007, Wal-Mart terminated Les Williams' employment for threatening a Wal-Mart customer.  On November 13, 2007, Ms. Loya filed an administrative Charge of Discrimination, contending that Wal-Mart subjected her to a hostile work environment and retaliation when it placed Les Williams as an Assistant Manager at the Silver City store ("2007 charge").  The EEOC issued a right to sue letter with respect to the 2007 Charge on December 12, 2007.

On March 14, 2008, Ms. Loya filed suit in this Court alleging claims based on sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.*, ("Title VII").  Specifically, Ms. Loya alleges that the placement of Les Williams in the Silver City store (1) was an act of further sexual harassment and created a hostile work environment; and (2) was in retaliation for the filing of the 2006 Charge.

Wal-Mart has moved for summary judgment on both claims.  As to the sexual harassment claim, Wal-Mart argues that (1) the claim is limited to the period during which she and Les Williams worked as Assistant Managers in the Silver City store and any allegations of sexual harassment in the Deming store are time-barred and not otherwise part of this claim; and (2) Ms. Loya was not subjected to sexual harassment in the Silver City store.  As to the retaliation claim, Wal-Mart asserts that (1) Ms. Loya is unable to establish a prima facie case; and (2) she is unable to show pretext. With respect to both claims, Wal-Mart contends that it is entitled to the affirmative defense set out in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

## II.   Standard.

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' "  *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006) (quoting Rule 56(c)).  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.  *Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Trainor v. Apollo Metal Specialties*, Inc., 318 F.3d 976, 979 (10th Cir. 2002); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  If this burden is met, the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (*citing Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting that, on summary judgment, the plaintiff can "no longer rest on the pleadings")).

The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Evidence relied upon in opposition to summary judgment "may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving." *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007).  The nonmovant's "evidence, including

3

testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

### III.    Statement of Facts.

Ms. Loya does not dispute most of the facts as presented by Wal-Mart and the following statement of facts is primarily based upon the undisputed facts as presented by the parties. Nonetheless, on summary judgment, the Court must view the facts in a light most favorable to Ms. Loya, the non-moving party. *See Fuerschbach*, 439 F.3d at 1207. Thus, reasonable inferences are drawn and factual ambiguities are resolved in Ms. Loya's favor.

On August 20, 1993, Wal-Mart hired Ms. Loya as an hourly Associate at its Silver City Store. (Def. Ex. 1, Associate History Profile ("HPRO").) On September 23, 2000, Ms. Loya was promoted to an Assistant Manager at its Ennis, Texas store. (HPRO.) Ms. Loya returned to the Silver City store as an Assistant Manager on November 3, 2001. (HPRO.) On October 6, 2003, Ms. Loya resigned to spend time with her family. (HPRO; Def. Ex. 3, Loya Dep.) On November 13, 2004, Ms. Loya returned to Wal-Mart as an Assistant Manager at the Deming Store, where she reported to Store Manager Les Williams and Co-Managers Adrian Mijares and Charles Peabody. (HPRO; Loya Dep. at 42; Def. Ex. 4, Les Williams Dep. at 10.)

Ms. Loya felt that Les Williams and Mr. Mijares treated her less favorably than younger, male managers in terms of her hours, working conditions, and benefits. In addition, Ms. Loya testified in her deposition that Les Williams subjected her to sexually suggestive statements on a daily basis, such as: "If you would sleep with me, you wouldn't want any other man. Once you have had me, that's all you will want." (Loya Dep. 84.) Ms. Loya testified in her deposition that Les Williams would tell her: "You sure are looking good today. Those pants really look good on your ass. You look better walking away from me than walking towards me." (Loya Dep. 85.) Ms. Loya

4

testified in her deposition that Les Williams also said: "You have never seen big until you have seen me." (Loya Dep. 85.)  Also in her deposition, Ms. Loya testified that Les Williams would sit in his chair and make movement back and forth while saying: "I could really rock your world. Come sit on my lap."  (Loya Dep. 84.)

Ms. Loya testified in her deposition that, when Les Williams would shake her hand, he would run his finger on the palm of her hand.  (Loya Dep. 84-85.)  Ms. Loya testified in her deposition that, when Ms. Loya asked Les Williams to explain the meaning of that gesture in the presence of Adrian Mijares, a co-manager, Les Williams and Mr. Mijares laughed at Ms. Loya. (Loya Dep. 85.)  Ms. Loya testified in her deposition that the comments and gestures started the week after she started work at the Deming store, in November 2004, and continued until February 2006, which was the month after she filed the 2006 Charge.  (Loya Dep. at 86.)

In approximately March 2005, Ms. Loya reported the alleged disparate treatment and sexual harassment to Pedro Andrade, District Manager, during a district meeting in Rio Rico, Arizona. (Loya Dep. at 87.)  Mr. Andrade assured Ms. Loya that he would talk to Les Williams and Mr. Mijares. (Loya Dep. at 88.)  When Ms. Loya returned to work the following day, Mr. Mijares and another assistant manager were laughing and joking that Mr. Andrade called and told Mr. Mijares that they had nothing but babies working there as assistant managers.  (Loya Dep. 88.)  The alleged sexual harassment continued until late November 2005.  (Def. Ex. 9.)

On January 26, 2006, Ms. Loya filed the 2006 Charge of Discrimination ("2006 Charge") against Wal-Mart with the New Mexico Department of Labor, Human Rights Division and the United States Equal Employment Opportunity Commission ("EEOC").  (Def. Ex. 9.)  In the 2006 Charge, Ms. Loya alleged that Adrian Mijares and Les Williams treated her less favorably than younger, male managers in terms of her hours, working conditions, and benefits.  (*Id.*)  Also, Ms.

Loya charged that Les Williams had sexually harassed her from November 13, 2004 until two months before the date of the charge, which would have been November 26, 2005. (*Id*.) Ms. Loya stated she had been "the victim of repeated unwelcome sexual solicitation and harassment." (*Id*.) Additionally, she stated that her "complaints regarding these issues of harassment and discrimination have been ignored." (*Id*.)

After receiving the 2006 Charge on February 7, 2006, Wal-Mart initiated an investigation into Ms. Loya's allegations. (Def. Ex. 10, Notice of 2006 Charge, Def. Ex. 11, Wal-Mart Investigation File.) Ron Williams, Market Manager, and Elizabeth Gonzales, a Las Cruces Store Manager, collected written statements from employees at the Deming Wal-Mart. (Investigation File at WM/LOYA0111-13, 0133-88, 0198.) Many of the employees recounted that Mr. Mijares was an abusive supervisor, and several employees claimed that Les Williams was demanding and unfair. (Investigation File at WM/LOYA0111-13, 0133-88, 0198.)

Ron Williams and Ms. Gonzales interviewed Ms. Loya about her allegations and Ms. Loya submitted a written statement. (Investigation File at WM/LOYA0114-20, 0131-32; Def. Ex. 12, Pl.'s Responses to Defendant's First Set of Interrogatories; Def. Ex. 13, Ron Williams Dep. at 4-5, 44-45, 47-48.) Ms. Loya reported that Les Williams made comments to her, such as: "Hey, you look good," "I can rock your world," and "Once you have me, you will not want anything else." (Investigation File at WM/LOYA0118-119.) Ms. Loya also recounted that, when Les Williams shook her hand, he would run his finger against her palm. (*Id*.) In her written statement, Ms. Loya related that Les Williams made the sexually suggestive comments on a daily basis. (Investigation File at WM/LOYA0130.)

As a result of the investigation, Wal-Mart discharged Mr. Mijares for his demeaning treatment of employees and issued Les Williams a written corrective action for not holding Mijares

more accountable.  However, Wal-Mart did not conclude that Les Williams had sexually harassed Ms. Loya.  (Investigation File at WM/LOYA0194; Les Williams Dep. at 16; Ron Williams Dep. at 10-12.)  Wal-Mart did not discipline Les Williams for the alleged sexual harassment of Ms. Loya.

In early 2006, Ms. Loya asked Les Williams if she could transfer to the Silver City store based on family considerations.  (Loya Dep. at 57.)  Les Williams informed Ms. Loya that she could not get transferred "just like that."  (Loya Dep. at 57.)  Subsequently, Ms. Loya asked Ron Williams to transfer her to the Silver City store "because of all the problems [she] was having [she] felt [she] needed to be with [her] family."  (Loya Dep. at 57-58; Ron Williams Dep. at 27.)  While the Silver City store did not have an opening for an Assistant Manager, Ron Williams located an Assistant Manager in Silver City willing to transfer to Deming.  (Ron Williams Dep. at 28.)  On May 6, 2006, Ms. Loya transferred to the Silver City store.  (Loya Dep. at 58; Ron Williams Dep. at 28; Def. Ex. 14, Transfer Form.)  Ms. Loya went to mediation on the 2006 Charge on June 14, 2006.  (Compl. ¶ 8.)  By then, Ms. Loya had transferred to the Silver City store in order to avoid further contact with Les Williams.  (Compl. ¶ 8.)

After her transfer to Silver City, Ms. Loya worked the day shift from May 2006 until the following February.  (Loya Dep. at 45.)  In February, 2007, Ms. Loya switched back to the night shift, which she prefers.  (Loya Dep. at 45.)  Ms. Loya testified in her deposition that at no time since her transfer has Wal-Mart disciplined or demoted her, decreased her pay or benefits, transferred her against her wishes, or changed her shift or responsibilities against her wishes.  (Loya Dep. at 45-46; 48.)  Ms. Loya did receive some negative comments on her January 2008 evaluation, which she attributes to the store being short on associates.  (Loya Dep. at 47.)  However, Ms. Loya does not contend that these comments resulted in any adverse employment action, or were issued in retaliation for her protected activity.  (Loya Dep. at 45-48.)

7

On September 15, 2006, the EEOC issued the right to sue letter on the 2006 charge.  (Def. Ex. 15.)  The right to sue letter was mailed to Ms. Loya's address in Deming, with a courtesy copy sent to Duane Z. Padilla, Attorney at Law.  (Def. Ex. 15.)  By that time, Ms. Loya no longer lived at the Deming address.  (Loya Dep. at 73.)  Ms. Loya testified at her deposition that she notified the EEOC of her new address in May 2006 with a telephone call and a card.  (Loya Dep. at 73.)  Ms. Loya testified in her deposition that she learned of the issuance of the right to sue letter, and the administrative dismissal of the 2006 Charge, when she called the EEOC to inquire about her case and she received the right to sue letter on the 2006 Charge after November 2007.  (Loya Dep. at 74.)

In early 2007, Les Williams, who was still the Store Manager in Deming, contacted Archie Smith, a Market Asset Protection Manager, regarding Juan Reyes, an Assistant Manager at the Deming store.  (Les Williams Dep. at 11-13.)  Les Williams suspected that Mr. Reyes was socializing with subordinates outside of work in violation of Wal-Mart policy.  (Les Williams Dep. at 12-13.)  Les Williams subsequently contacted Market Human Resources Manager Paul Stevens regarding his suspicion that Reyes was socializing with Veronica Garcia, an hourly Associate.  (Les Williams Dep. at 13-14.)

Mr. Smith and Mr. Stevens investigated the matter, but were unable to confirm the allegations against Mr. Reyes.  (Ron Williams Dep. at 16-17.)  However, Mr. Smith and Mr. Stevens discovered that Les Williams had conducted "unauthorized surveillance" on Mr. Reyes and Ms. Garcia in violation of Wal-Mart policy.  (Ron Williams Dep. at 16-17.)  Specifically, Les Williams had followed Mr. Reyes and Ms. Garcia away from the store to determine if they were violating Wal-Mart policy.  (Ron Williams Dep. at 10 and 40.)  Given this improper surveillance, Wal-Mart terminated Les Williams' employment, subject to Ron Williams' approval.  (Ron Williams Dep. at 40.)  Ron Williams approved the termination in June 2007.  (Les Williams Dep. at 20; Ron Williams

Dep. at 40.)

After his termination, Les Williams telephoned Michael Moore, Senior Vice President for Wal-Mart's Western Division, to contest his termination pursuant to Wal-Mart's Open Door Policy. (Def. Ex. 16, Moore Dep. at 6, 8-9, 12; Les Williams Dep. at 21-22.)  Mr. Moore is based out of Wal-Mart's Home Office in Bentonville, Arkansas, and he oversees the operations of approximately 750 stores throughout Arizona, California, Nevada, New Mexico, Texas, and Utah.  (Moore Dep. at 6; Les Williams Dep. at 21; Ron Williams Dep. at 40.)  Wal-Mart employs approximately 250,000 Associates in the Western Division.  (Moore Dep. at 36.)

Les Williams asked Mr. Moore to reinstate him.  (Moore Dep. at 14-15.)  As grounds, Les Williams explained that he engaged in the unauthorized surveillance in order to enforce Wal-Mart's non-fraternization policy, and cited his sixteen-year work history with Wal-Mart and community involvement as reasons warranting his rehire or reinstatement.  (Les Williams Dep. at 22.)  After speaking with Les Williams, Mr. Moore coordinated with Wal-Mart Human Resources personnel to verify the basis for the termination and received confirmation that Les Williams had, in fact, conducted surveillance on two employees in violation of Wal-Mart policy.  (Moore Dep. at 7, 13-14, 16.)  Nevertheless, Mr. Moore decided to rehire Les Williams, but to demote him to Assistant Manager and place him at a different store.  (Moore Dep. at 17-18, 20, 41.)

Before rehiring Les Williams, Mr. Moore contacted Ron Williams and asked if there was anything he should know before moving forward with the decision.  (Moore Dep. at 19; Ron Williams Dep. at 14.)  Ron Williams responded that, if Moore wanted to rehire Les Williams, he was fine with it.  (Ron Williams Dep. at 14.)  After speaking with Ron Williams, Mr. Moore notified Les Williams of the decision to rehire him as an Assistant Manager at one of the Las Cruces Wal-Mart stores.  (Moore Dep. at 23; Les Williams Dep. at 22.)

9

Although he originally agreed to work in Las Cruces, Les Williams later telephoned Mr. Moore and asked if he could work at the Silver City store instead.  (Moore Dep. at 17-18; Les Williams Dep. at 38-39.)  Les Williams told Mr. Moore he preferred Silver City for family reasons.  (Moore Dep. at 17-18, 21.)  Based on this conversation, Mr. Moore contacted Ron Williams and informed him that Les Williams would be returning to Wal-Mart as an Assistant Manager at the Silver City store.  (Ron Williams Dep. at 30.)  Ron Williams, in turn, contacted Albert Quinones, the Store Manager in Silver City and notified Mr. Quinones that Les Williams would be working as an Assistant Manager in Silver City.  (Def. Ex. 17, Quinones Dep. at 10, 21-25; Ron Williams Dep. at 31.)

In late July 2007, Ms. Loya received a telephone call from Margarita Granillo, an Associate at the Deming store.  (Loya Dep. at 68-69.)  Ms. Granillo informed Ms. Loya that she had heard that Les Williams might be placed at the Silver City store as an Assistant Manager.  (Loya Dep. at 68-69.)  Following her conversation with Ms. Granillo, Ms. Loya immediately contacted Mr. Quinones and told him that she and Les Williams had a "problem" at the Deming store and that she objected to Les Williams working at the Silver City Store.  (Loya Dep. at 68; Quinones Dep. at 8, 11.)  Ms. Loya appeared very upset and she was crying.  (Quinones Dep. at 11, 20.)  Mr. Quinones had heard rumors about Les Williams coming to the Silver City store, but he had not heard anything from Ron Williams.  (Loya Dep. at 68-69.)  Mr. Quinones told Ms. Loya that he would contact Ron Williams and ask him about it.  (Loya Dep. at 69-70.)

A couple of days later, after speaking with Ron Williams, Mr. Quinones told Ms. Loya that it was a "sure thing" that Les Williams was going to Silver City and if Ms. Loya had any questions, she should call Ron Williams.  (Loya Dep. at 70; Quinones Dep. at 12-13.)  Mr. Quinones observed that Ms. Loya appeared upset by the news.  (Quinones Dep. at 13.)  However, Ms. Loya did not

contact Ron Williams, or anyone else at Wal-Mart, about the matter.  (Loya Dep. at 70-71.)

Ms. Loya testified in her deposition that she believes Ron Williams allowed Les Williams to work at the Silver City store in retaliation for her filing of the 2006 Charge.  (Loya Dep. at 64.) Ms. Loya had already complained to Ron Williams about Les Williams and Ron Williams "already knew what [she] had gone through with [Les Williams]."  (Loya Dep. at 65.)  Ms. Loya felt that Ron Williams placed Les Williams at the Silver City store in order to "show [her] that they can actually do anything that they want to do." (Loya Dep. at 66.)

Les Williams worked as an Assistant Manager at the Silver City store from August 18, 2007 to September 11, 2007.  (Loya Dep. at 59; Ron Williams Dep. at 29, 35.)  On August 28, 2007, Ms. Loya requested, and, on August 30, 2007, she received, a paid leave of absence due to stress and situational anxiety.  (Def. Ex. 18, Leave of Absence Request; Loya Dep. at 72, 107-108.)

Soon after his rehire, Les Williams was involved in an off-duty verbal altercation with a customer at the Deming store, where he was shopping at the time.  (Moore Dep. at 26-27; Les Williams Dep. at 25, 27; Ron Williams Dep. at 35-36.)  Following an investigation of the incident, Wal-Mart terminated Les Williams' employment, again subject to Ron Williams' approval.  (Ron Williams Dep. at 36, 40.)   Ron Williams approved the termination on September 11, 2007. (Quinones Dep. at 15; Loya Dep. at 59; Ron Williams Dep. at 35, 40.)  As he had done previously, Les Williams telephoned Mr. Moore to contest the decision.  (Les Williams. Dep. at 27-28.)  Mr. Moore declined to rehire Les Williams.  (Moore Dep. at 28.)  Les Williams also contacted Ron Williams, who explained the termination was final.  (Les Williams Dep. at 28.)

During the period in August 2007 when Ms. Loya and Les Williams worked at the Silver City store, Ms. Loya worked the night shift from 8:00 p.m. to 8:00 a.m. Sunday, Monday, Tuesday, and Wednesday.  (Loya Dep. 42.)  Les Williams worked the day shift, from 7:00 a.m. to 10:00 p.m.

(Loya Dep. at 59-60.)   During this period, Les Williams would "make his little gestures" at her. (Loya Dep. at 61.)   Ms. Loya described the gestures as "[h]e would just turn and look at me and like smile and move his head up and down" and "throw his head back."   (Loya Dep. at 63.)

Ms. Loya would try to avoid Les Williams. (Loya Dep. at 61.)   If Ms. Loya knew Les Williams was on one side of the store, she would stay on the other side of the store as much as possible. (Loya Dep. at 61.)   If Les Williams walked into a meeting where Ms. Loya was, Ms. Loya "would walk straight out" or "would get out right away." (Loya Dep. at 62.)   If Les Williams would start to walk towards Ms. Loya, Ms. Loya would walk the other way. (Loya Dep. at 61.)   Ms. Loya saw Les Williams about three times per week during this time, but they never spoke.   (Loya Dep. at 60-61.)   Les Williams made the "little gestures" at her about five or six times.   (Loya Dep. at 62.)

On November 13, 2007, Ms. Loya filed the 2007 Charge of Discrimination against Wal-Mart ("2007 Charge"). (Def. Ex. 19.)   In the 2007 Charge, Ms. Loya asserted Ron Williams harassed her when he placed Les Williams as an Assistant Manager at the Silver City store and Ron Williams placed Les Williams at the Silver City Store in retaliation for her 2006 Charge.   (Def. Ex. 19.)

On December 12, 2007, the EEOC mailed a Dismissal and Notice of Rights to Ms. Loya dismissing her November 2007 Charge.   (Def. Ex. 20.)   On March 14, 2008, Ms. Loya filed her judicial Complaint for Damages Due to Civil Rights Violations, Hostile Work Environment, and Retaliation ("Complaint").   (Doc. 1.)   In the Complaint, Ms. Loya alleges that (1) the act of transferring Les Williams to work in the same store as Ms. Loya, after Ms. Loya had previously filed and attempted to mediate charges of sexual harassment perpetrated by Les Williams, was an act of further sexual harassment against Ms. Loya and created a hostile work environment for Ms. Loya; and (2) the act of transferring Les Williams to work in the same store as Ms. Loya was in retaliation for her filing of the 2006 Charge.

**IV.      Discussion.**

**A.      Sexual harassment hostile work environment claim.**

Wal-Mart argues the sexual harassment claim is limited to the period during which Ms. Loya and Les Williams worked in the Silver City store and any allegations of sexual harassment raised in the 2006 Charge are time-barred. Ms. Loya contends that she may premise her hostile work environment claim on the alleged sexual harassment at the Deming store, as alleged in the 2006 Charge.

Title VII contains two limitations provisions that fix the time frame for bringing suit. The first requires a plaintiff to file a charge of discrimination within 300 days[1] "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Second, the claimant has ninety days in which to file a lawsuit after receipt of an EEOC right to sue letter. 42 U.S.C. § 2000e-5(f)(1). Wal-Mart argues that Plaintiff's claims relating to the harassment at the Deming store are barred because she did not file a lawsuit within 90 days after the September 15, 2006 right to sue letter, as required by 42 U.S.C. § 2000e-5(f)(1). However, the cases cited by Wal-Mart apply 42 U.S.C. § 2000e-5(e)(1), which requires a claimant to file a charge of discrimination within 300 days "after the alleged unlawful employment practice occurred", and not 42 U.S.C. § 2000e-5(f)(1), which allows the claimant ninety days in which to file a lawsuit after receipt of an EEOC right to sue letter. *See Holmes v. Utah Dep't of Workforce Servs.*, 483 F.3d 1057, 1063-64 (10th Cir. 2007); *Duncan v. Manager, Dep't of Safety, City and County of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005). Wal-Mart's argument conflates the timeliness requirements and ignores the unique qualities

---

[1] Claimants are allowed 300 days in "deferral states," such as New Mexico, where the EEOC defers to the enforcement efforts of a state agency empowered to undertake employment discrimination investigations. *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1206 n.3 (10th Cir. 2007).

of hostile work environment claims.

Unlike a discrete unlawful employment practice, such as a firing or demotion, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' " *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)). With respect to a hostile work environment claim, "[i]n order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." *Morgan*, 536 U.S. at 118.

As the Supreme Court explained:

> The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Morgan*, 536 U.S. at 117.

The alleged sexual harassment occurred at the Deming store between November 2004 and November 2005. Ms. Loya filed the 2006 Charge on January 26, 2006, which is within 300 days of the alleged sexual harassment at the Deming store. The alleged harassment occurred at the Silver City store in July and August 2007. Ms. Loya filed the 2007 Charge on November 13, 2007, which is within 300 days of the alleged sexual harassment at the Silver City store. Clearly, Ms. Loya filed the administrative charges within 300 days after the alleged unlawful employment practices occurred. As a result, Ms. Loya complied with 42 U.S.C. § 2000e-5(e)(1), and the allegations raised in the 2006 Charge are not barred by this section.

Wal-Mart questions whether Ms. Loya complied with 42 U.S.C. § 2000e-5(f)(1), the second timeliness requirement. A plaintiff must file a lawsuit within 90 days of receipt of a right to sue

letter.  42 U.S.C. § 2000e-5(f)(1).  This provision is not jurisdictional; a "plaintiff may revive a lapsed claim through equitable tolling."  *Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1169 (10th Cir. 2008) (*citing Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995) ("Compliance with the filing requirements of Title VII . . . is a condition precedent to suit that functions like a statute of limitations and is subject to waiver, estoppel, and equitable tolling.")).  Moreover, "Title VII contains no language barring a plaintiff from presenting allegations in support of a hostile environment claim that he had advanced in a prior EEOC complaint but chosen not to litigate within 90 days of a right-to-sue letter."  *Tademy*, 520 F.3d at 1168-69.  The Tenth Circuit has observed that a contrary approach would undermine *Morgan* and discourage claimants from resolving their administrative charges without litigation.  *Tademy*, 520 F.3d at 1169.  Ms. Loya attempted to resolve the sexual harassment alleged in the 2006 Charge by transferring to the Silver City store.  Wal-Mart negated this attempt when it placed Les Williams at the Silver City store.  Ms. Loya should not be penalized for trying to resolve her dispute without litigation.  Simply put, Title VII's timely filing provision does not bar litigation of the hostile environment claim contained in the 2006 Charge.

Additionally, the *Morgan* Court held "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."  *Morgan*, 536 U.S. at 105.  Construed in the light most favorable to Ms. Loya, the record indicates that the placement of Les Williams at the Silver City store contributed to the alleged hostile work environment.

Ron Williams knew the history between Ms. Loya and Les Williams.  Ron Williams knew that Ms. Loya had claimed that Les Williams sexually harassed her at the Deming store.  Regardless of whether Wal-Mart's internal investigation determined the sexual harassment happened or not,

15

Ron Williams knew that Ms Loya believed she had been sexually harassed by Les Williams at the Deming store.  Ron Williams knew that Ms. Loya had transferred to the Silver City store in order to get away from Les Williams.  To reassign Les Williams to the store where Ms. Loya sought refuge surely could be reasonably expected to conjure up memories of the sexual harassment.  In light of this corporate knowledge, the placement of Les Williams at the Silver City store amounted to additional sexual harassment in August 2007.  Indeed, Wal-Mart was aware of the severe emotional stress imposed on Ms. Loya; it granted her a paid leave of absence due to stress and situational anxiety.  (Def. Ex. 18, Leave of Absence Request; Loya Dep. at 72, 107-108.)

Wal-Mart contends that no rational jury could find that Ms. Loya was subjected to sexual harassment at the Silver City store.  The Court disagrees.  Title VII proscribes employment practices that "permeate the workplace with 'discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' "  *Tademy*, 520 F.3d at 1156 (internal citation and quotation omitted). In order to state a prima facie claim of a hostile work environment, a plaintiff must establish: (1) she was subjected to at least one action violative of Title VII, taken by a fellow employee or supervisor; (2) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment; and (3) the employer's response to incidents of which it was apprised was inadequate.  *Tademy*, 520 F.3d at 1156.  Ms. Loya has stated a prima facie case of a hostile work environment.

Ms. Loya has demonstrated actions violative of Title VII in August 2007.  Ron Williams' decision to place Les Williams at the Silver City store, in light of his history and over Ms. Loya's objections, could have constituted sexual harassment.  The actions of Les Williams at the Silver City store, when considered in the context of the prior allegations, could qualify as sexual harassment.

16

At least three days per week, at the Silver City store, Ms. Loya's shift overlapped with that of Les Williams up to two hours. (Loya Dep. at 42, 59-60.) During these periods, Les Williams made "his little gestures" at her about five or six times. (Loya Dep. at 61-62.) Ms. Loya described the gestures as "[h]e would just turn and look at me and like smile and move his head up and down . . ." and throw his head back. (Loya Dep. at 63.) While such gestures might have been nonsensical to someone who had not been victimized, to a reasonable person who had been subjected to earlier sexual harassment such gestures could be perceived as continuation of the prior sexual harassment. Construed in the light most favorable to Ms. Loya, the actions of Les Williams at the Silver City store constituted sexual harassment in violation of Title VII.

The harassment was also pervasive and severe enough to alter the conditions of Ms. Loya's employment. Conduct is sufficiently severe or pervasive if (1) the conduct "create[d] an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive" and (2) the plaintiff "subjectively perceive[d] the environment to be abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (*quoting Harris*, 510 U.S. at 23). "The severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact." *Tademy*, 520 F.3d at 1162 (internal quotation omitted).

Ms. Loya would go out of her way to try to avoid Les Williams. (Loya Dep. at 61.) If Ms. Loya knew Les Williams was on one side of the store, she would stay on the other side of the store. (Loya Dep. at 61.) If Les Williams walked into a meeting where Ms. Loya was, Ms. Loya would

leave. (Loya Dep. at 62.)  If Les Williams would start to walk towards Ms. Loya, Ms. Loya would walk the other way.  (Loya Dep. at 61.)  Ms. Loya was so stressed by Les Williams that she took a leave of absence from her job.  "Title VII comes into play before the harassing conduct leads to a nervous breakdown." *Harris*, 510 U.S. at 22.  Considering the evidence in the light most favorable to Ms. Loya, the Court concludes that a reasonable jury could find the harassment alleged by Ms. Loya was sufficiently severe and pervasive to alter the conditions of her employment and satisfy the second element of a prima facie case of a hostile work environment.

Wal-Mart's response to the situation was wholly inadequate.  It bears underscoring that, after Ms. Loya transferred to the Silver City store in order to escape harassment by Les Williams, Wal-Mart decided to place Les Williams at the Silver City store.  As soon as she discovered that Les Williams might be placed at the Silver City store, Ms. Loya complained to Mr. Quinones, who was her direct supervisor.  Mr. Quinones discussed the matter with Ron Williams, who told him it was a "sure thing" that Les Williams would be placed in Silver City. Ms. Loya reported the Deming sexual harassment to both Mr. Andrade and Ron Williams to no avail.  Mr. Andrade took no action and Ron Williams found her allegations were unfounded.

From the evidence, considered in the aggregate and construed in the light most favorable to Ms. Loya, a reasonable jury could conclude that the harassment alleged by Ms. Loya was sufficiently severe and pervasive to create a hostile work environment at the Silver City store.  Ms. Loya has submitted sufficient evidence to preclude summary judgment on her hostile work environment claim.

**B.    Retaliation claim.**

Wal-Mart contends that no reasonable jury could find in favor of Ms. Loya on her retaliation claim.  Specifically, Wal-Mart contends that Ms. Loya is unable to establish a prima facie case of

retaliation because she can show neither an adverse employment action nor a causal connection and she is unable to establish pretext.

Where, as here, the plaintiff does not offer direct evidence of retaliation, a retaliation claim is analyzed under the burden-shifting framework delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Fye v. Okla. Corp. Comm'n,* 516 F.3d 1217, 1225 (10th Cir. 2008). To establish a prima-facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in protected activity under Title VII; (2) she suffered a materially adverse employment action contemporaneous with engaging in the protecting activity or after engaging in the protected activity; and (3) there is a causal connection between the protected activity and the adverse action. *See Chavez*, 397 F.3d at 838.

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its action. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008). If the defendant meets its burden of production by offering a legitimate rationale in support of its action, the burden shifts back again to the plaintiff to show that the defendant's proffered reason was a pretext for discrimination. *Id*.

With respect to the prima facie case, Wal-Mart does not dispute that Ms. Loya has met the first element, but disputes the second and third elements, adverse employment action and causation. As to the second element of the prima facie case, "an employer's actions are 'materially adverse' if they are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.' " *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009) (*quoting Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)). This standard focuses on the employer's retaliatory action, not the underlying discrimination the employee had opposed. *Semsroth*, 555 F.3d at 1184. While the standard is sensitive to the particular

circumstances of each case, it prescribes an objective inquiry that does not turn on a plaintiff's personal feelings about those circumstances. *Id.* (citation omitted). "Each case is 'judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.' " *Semsroth*, 555 F.3d at 1184 (*quoting White*, 548 U.S. at 71).

Ms. Loya contends that the placement of Les Williams at the Silver City store constituted a materially adverse employment action because she "attempted to get away from Les Williams but was further subjected to him after she filed" the 2006 charge. (Doc. 56, Pl. Response Br. at 21.) As more fully discussed in Section III. A., *supra*, the placement of Les Williams at the Silver City store, when considered in the context of the history between Ms. Loya and Les Williams and the 2006 Charge, altered Ms. Loya's conditions of employment.  The Supreme Court has observed that "discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris*, 510 U.S. at 22.  Considering the record in the light most favorable to Ms. Loya, the placement of Les Williams at the Silver City store distressed Ms. Loya to the point that it was likely to deter her from complaining about the discrimination. *See White*, 548 U.S. at 68.  Ms. Loya has shown she was subjected to a materially adverse employment action after she filed her 2006 Charge.  For this reason, Ms. Loya has satisfied the second element of the prima facie case of retaliation.

The outcome differs with respect to the third element of the prima facie case, which requires a plaintiff to demonstrate a causal connection between the protected activity and the adverse action. "[A] causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007) (quotation

omitted).  Ms. Loya filed her 2006 Charge in January 2006.  She transferred to Silver City in May 2006.  Wal-Mart decided to place Les Williams at the Silver City Store in July 2007 and placed him there in August 2007.  The placement of Les Williams at the Silver City store is too remote in time to establish a causal connection based on temporal proximity alone as a matter of law.  *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (holding four months is too large a time gap to establish a causal connection); *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) (noting that Tenth Circuit has found a proximity of three months insufficient to support "a presumption of causation"); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("[W]e have held that a three-month period, standing alone, is insufficient to establish causation.").

Because an eighteen-month time period, standing alone, does not support an inference of retaliatory motive, Ms. Loya must present additional evidence to establish the necessary causal connection.  *See Piercy*, 480 F.3d at 1198-99 ("[T]he passage of time does not necessarily bar a plaintiff's retaliation claim if additional evidence establishes the retaliatory motive."); *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) ("Standing alone, temporal proximity between the protected activity and the retaliatory conduct must be very close in time. Otherwise, the plaintiff must offer additional evidence to establish causation." (quotation omitted)).

Wal-Mart argues that there was no causal connection because Mr. Moore made the decision to place Les Williams at the Silver City store and Mr. Moore had knowledge of neither Ms. Loya nor her 2006 Charge.  This argument misses the mark.  Before rehiring Les Williams, Mr. Moore contacted Ron Williams and asked if there was anything he should know before moving forward with the decision.  (Moore Dep. at 19; Ron Williams Dep. at 14.)  Ron Williams indicated he "was fine" with the decision and did not mention the 2006 Charge.  (Ron Williams Dep. at 14.)  After speaking with Ron Williams, Mr. Moore notified Les Williams of the decision to rehire him as an

Assistant Manager at one of the Las Cruces Wal-Mart stores.  (Moore Dep. at 23; Les Williams Dep. at 22.)  After Les Williams asked to go to Silver City, Mr. Moore contacted Ron Williams and informed him that Les Williams would be returning to Wal-Mart as an Assistant Manager at the Silver City store.  (Ron Williams Dep. at 30.)

At no point did Ron Williams advise Mr. Moore of the history between Ms. Loya, namely that Ms. Loya had filed the 2006 Charge and that she had transferred to Silver City to get away from Les Williams.  Ron Williams also neglected to mention that Ms. Loya was working at the Silver City store and that she objected to working with Les Williams.  When Mr. Quinones advised Ron Williams that Ms. Loya was upset about Les Williams being assigned to the Silver City store, Ron Williams stated that it was a "sure thing" that Les Williams was going to Silver City and if Ms. Loya had any questions, she should call Ron Williams.  (Loya Dep. at 70; Quinones Dep. at 12-13.)

Construed in the light most favorable to Ms. Loya, the record establishes that Ron Williams participated in the decisions to rehire Les Williams and to place him at the Silver City store.  Based on his knowledge of the history between Ms. Loya and Les Williams, Ron Williams should have informed Mr. Moore of the potential for problems.  In light of Ron Williams participation in the decision to rehire Les Williams and place him at the Silver City store, Wal-Mart cannot avoid liability by hiding behind Mr. Moore's lack of knowledge.

Nonetheless, Ms. Loya's carries the burden to establish a prima facie case of retaliation, including a causal connection between the protected activity and the adverse action to support an inference of a retaliatory motive.  As noted above, the eighteen-month time period, standing alone, is insufficient as a matter of law to establish a causal connection. Ms. Loya proffers no other evidence in support of a causal connection, other than the fact that after she transferred to Silver City, Les Williams also transferred to Silver City.  (Doc. 56, Pl. Response Br. at 22.)  This fact does

not support an inference of a causal connection between the 2006 Charge and the decision to place Les Williams in the Silver City store. Simply put, the record contains no evidence that would support an inference of a retaliatory motive. Because the record contains no evidence of a causal connection between the protected activity and the adverse employment action, Ms. Loya has failed to establish the third element of a prima facie case of retaliation.

If a plaintiff is unable to make out a prima facie case, judgment as a matter of law is appropriate. *See Aquilino v. Univ. of Kan.*, 268 F.3d 930, 936 (10th Cir. 2001) (reversing district court's denial of a post-verdict motion for judgment as a matter of law where court held plaintiff did not suffer from an adverse employment action). Wal-Mart is entitled to summary judgment on the retaliation claim. For this reason, it is not necessary to address Wal-Mart's arguments concerning a legitimate, non-discriminatory business reason and pretext.

**C.    The *Faragher-Ellerth* affirmative defense.**

An employer may be vicariously liable to a victimized employee for an actionable hostile work environment created by a supervisor with immediate, or successively higher, authority over the employee in either of two situations. *Penn. State Police v. Suders*, 542 U.S. 129, 143-46 (2004); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). First, the employer is vicariously liable when "the supervisor's harassment culminates in a tangible employment act, such as discharge, demotion, or undesirable reassignment." *Ellerth*, 524 U.S. at 765. In that situation, the affirmative defense is unavailable. *Id.* Second, an employer may be vicariously liable for a hostile work environment, even absent a tangible employment action. *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1059 (10th Cir. 2009). However, in such a case, the employer will not be liable if it proves the following affirmative defense by a preponderance of the evidence: (1) it "exercised reasonable care to prevent and correct

promptly any sexually harassing behavior," and (2) the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

Ms. Loya contends that the *Ellerth/Faragher* defense is unavailable to Wal-Mart because the actionable hostile work environment involved a tangible employment action[2] against her. *See Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 808. According to Ms. Loya, the placement of Les Williams in Silver City constituted a tangible employment action. The Court disagrees.

A tangible employment action "requires an official act of the enterprise" against the plaintiff, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761-62. Viewed in the light most favorable to Ms. Loya, the evidence does not support the conclusion that the placement of Les Williams resulted in a significant change in employment status so as to constitute a tangible employment action under *Ellerth*, 524 U.S. at 761-62. Because a tangible employment action was not imposed upon Ms. Loya the *Ellerth/Faragher* affirmative defense may be available to Wal-Mart.

The first element of the *Ellerth/Faragher* affirmative defense requires the employer to establish that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. It is true that Wal-Mart had an anti-harassment policy and training program in effect at all relevant times. However, the existence of

---

[2] A "tangible employment action" is legally distinct from a "materially adverse employment action." *See Hillig v. Rumsfeld*, 381 F.3d 1028, 1031-32 (10th Cir. 2004) (discussing limited scope of *Ellerth/Faragher* and holding district court erred using *Ellerth/Faragher* definition of tangible employment to delineate prima facie case of retaliation); *and compare Ellerth*, 524 U.S. at 761-62 (holding a tangible employment action "requires an official act of the enterprise" against the plaintiff, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits . . .") *with Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006) (defining a "materially adverse employment action" in context of prima facie case of retaliation as "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.").

a sexual harassment policy and training program alone does not satisfy the employer's burden under the first prong of the *Ellerth/Faragher* affirmative defense.  In order to meet the first prong, not only must the employer take reasonable care to prevent sexually harassing behavior, the employer must also promptly correct any such behavior.  *Pinkerton*, 563 F.3d 1062 (*citing Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.)  While Wal-Mart had an anti-harassment policy on the books, a rational fact-finder could conclude the Wal-Mart did not exercise reasonable care in enforcing the policy because it transferred Les Williams to the very store where Ms. Loya had sought refuge from sexual harassment perpetrated by Les Williams.  To be clear, Wal-Mart has not satisfied the first element of the *Ellerth/Faragher* affirmative defense because is has not shown that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior.

Wal-Mart has also failed to establish the second element of the *Ellerth/ Faragher* affirmative defense.  To satisfy the second element, Wal-Mart must show that Ms. Loya unreasonably failed to avail herself of the preventive or corrective opportunities afforded her.  "Following *Ellerth* and *Faragher*, the plaintiff who alleges no tangible employment action has the duty to mitigate harm, but the defendant bears the burden to allege and prove that the plaintiff failed in that regard."  *Suders*, 542 U.S. at 152.  Wal-Mart has not shown that Ms. Loya unreasonably failed to take advantage of its policies aimed at preventing or correcting sexual harassment.

Wal-Mart's Sexual Harassment for Management Lesson provides that persons who have been victimized should first contact their immediate supervisor.  (Pl. Ex. 3.)  Wal-Mart's Open Door Policy states that "[a] Manager will investigate any complaints or concerns [an employee] raise[s] in an Open Door communication promptly and thoroughly, and will follow up with [the employee] upon completion of the investigation to discuss resolution of [the employee's] concern."  (Pl. Ex. 4.)  Construed in the light most favorable to Ms. Loya, the evidence indicates that Ms. Loya

25

complied with these policies.

As soon as she discovered that Les Williams might be placed at the Silver City store, Ms. Loya complained to her direct supervisor, Mr. Quinones. Ms. Loya was very upset and tearfully recounted that she had experienced a "problem" with Les Williams at the Deming store. Mr. Quinones discussed the matter with Ron Williams, who told him it was a "sure thing" that Les Williams would be placed in Silver City. Mr. Quinones reported back to Ms. Loya that it was a "sure thing" and told her to contact Ron Williams if she had a problem with it. Ms. Loya did not contact Ron Williams, but within the same month, she requested a leave of absence due to stress and situational anxiety.

Under the circumstances, it was reasonable for Ms. Loya to opt not to contact Ron Williams. Ms. Loya had already complained to Ron Williams about sexual harassment by Les Williams at the Deming store and Ron Williams did not believe her. Ms. Loya reminded Ron Williams of her prior complaint through Mr. Quinones. The *Ellerth/Faragher* defense does not require a harassed employee to make repeated complaints, even if those complaints go unheeded. *McGriff v. American Airlines, Inc.*, 431 F.Supp.2d 1145, 1155 (N.D. Okla. 2006). Ms. Loya could have reasonably decided that it would have been futile to call Ron Williams herself.

An employer is entitled to summary judgment under the *Ellerth/Faragher* affirmative defense "only if the evidence points but one way and is susceptible to no reasonable inferences supporting" the employee. *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1228 (10th Cir. 2000). In this case, the record is replete with reasonable inferences that weigh in Ms. Loya's favor. Mr. Loya complained to Mr. Andrade that Les Williams was sexually harassing her. Nothing happened. Ms. Loya filed the 2006 Charge reporting the sexual harassment and cooperated in the investigation. She was not believed. The following year, Ms. Loya heard that Wal-Mart planned to place Les

Williams at the Silver City store.  Notwithstanding her complaint, Les Williams was placed in the Silver City store.  Within a month, Ms. Loya requested and obtained a leave of absence.  Under the circumstances presented in this case, Wal-Mart has established neither that it exercised reasonable care to correct promptly the sexual harassment, nor that Ms. Loya unreasonably failed to take advantage of preventive or corrective opportunities.  Accordingly, Wal-Mart is not entitled to summary judgment based on the *Ellerth/Faragher* affirmative defense.

## IV.   Conclusion.

Ms. Loya submitted sufficient evidence to preclude summary judgment on her hostile work environment claim.  Wal-Mart is entitled to summary judgment on the retaliation claim.  Wal-Mart is not entitled to summary judgment on the *Ellerth/Faragher* affirmative defense.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED** as to the hostile work environment claim, **GRANTED** as to the retaliation claim, and **DENIED** as to the *Ellerth/Faragher* affirmative defense.

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

27